U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

MAY 29 2007

ROBERT H. SHEMWELL, CLERK
BY_____ DEPUTY
SHREVEPORT

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| GARY LEWIS SUTTON | CIVIL ACTION NO. 04-2464 |
| versus | JUDGE WALTER |
| MAKITA USA, INC. | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

### Introduction

Gary Sutton ("Plaintiff") commenced this action in state court against Makita USA, Inc. ("Makita"). Plaintiff alleged that he was injured when a saw blade made by Makita broke during use and struck his face. Makita removed the case based on an assertion of diversity jurisdiction. Plaintiff's original attorney did not challenge jurisdiction, but new counsel later enrolled for Plaintiff and quickly filed the Motion to Remand (Doc. 41) that is now before the court. Plaintiff asserts that Makita has not satisfied its burden of establishing that there is more than $75,000 in controversy.

### Amount in Controversy Requirement

"There is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." Coury v. Prot, 85 F.3d 244, 248 (5th Cir. 1996). In a removed case, the removing defendant has the burden of showing that the amount in controversy element of diversity jurisdiction is satisfied. In determining whether the defendant has met that burden, the court may look to the plaintiffs' pleadings to see whether it is facially apparent that the claims are for more than $75,000. The removing attorney may

also support jurisdiction by setting forth the facts in controversy, either in the notice of removal or by affidavit, that support a finding of the requisite amount. <u>Luckett v. Delta Airlines</u>, 171 F.3d 295, 298 (5th Cir. 1999); <u>Simon v. Wal-Mart Stores, Inc.</u>, 193 F.3d 848 (5th Cir. 1999).

The court can also look to other summary-judgment type evidence. <u>St. Paul Reinsurance Co., Ltd. v. Greenberg</u>, 134 F.3d 1250, 1253 (5th Cir. 1998). Such evidence is relevant only to the amount in controversy at the time the case was removed. Subsequent events do not deprive the court of jurisdiction once it has attached. <u>Id.</u> at 1253-54.

**Analysis**

Plaintiff's petition did not describe his injuries or damages in any detail. Plaintiff alleged that on December 18, 2003 he was using the Makita blade when it "tore apart and disintegrated." Plaintiff alleged that his "face was struck causing a severe facial laceration" that required he be "treated on an emergency basis" and receive "follow up care therefrom." Petition, ¶¶ 6-8. Plaintiff, consistent with Louisiana law, did not assert a claim for any particular amount of damages. He did assert that he is "entitled to damages as a result of the injuries sustained, and his prayer for relief included a request for "special damages, including, but not necessarily limited to, past present and future medical expenses and past, present, and future lost wages, earnings, or profits, as well as all other costs and losses proven under evidence . . . ."

Makita's notice of removal referenced the petition, which Makita opined "clearly" showed that the amount in controversy exceeds $75,000. Makita also added the following information:

> Counsel for Plaintiff has informed undersigned that Mr. Sutton's face was horribly disfigured from being struck by a piece of metal. Mr. Sutton also lost wages and incurred medical expenses due to his injuries. Counsel for plaintiff concedes the jurisdictional amount has been met."

Notice of Removal, Doc. 2 at ¶ IV.

Plaintiff has attached to his motion to remand excerpts from his deposition, the deposition of his physician, and a one-sentence stipulation (contrary to the reported position of his former attorney) that: "It is hereby stipulated that Plaintiff's claim is not in excess of the sum or value of $75,000.00 exclusive of interest and costs." Makita's opposition also attaches and references excerpts from the deposition of Plaintiff and his physician.

Dr. Barron O'Neal, a plastic and reconstructive surgeon, testified that on December 18, 2003 an emergency room physician at Willis-Knighton hospital called him to take care of Plaintiff's laceration. The cut to the right side of the face measured 15 centimeters in length and extended through the cheek to the level of the mucosa on the inside of the mouth. The laceration was complex, meaning it required multiple layers of closure as well as removal of some non-viable tissue. That procedure was done after the injection of a local anesthetic. Plaintiff was discharged that same day with an antibiotic and pain medication.

Plaintiff returned for a follow-up visit on December 26, 2003, and sutures were removed. His final visit was January 9, 2004, when a suture inside his mouth was removed. Dr. O'Neal believed that Plaintiff was progressing satisfactorily, and he released him to return only as needed. Plaintiff did not return. The total cost of the medical care was $2,235. Dr. O'Neal estimated that if Plaintiff later desired scar revision treatment, the total cost would be around $1,000 to $1,200. He opined that the scar had healed "very favorably."

Plaintiff testified that he felt an impact on his face when the blade broke. He was driven to the emergency room and walked in holding a shirt over the cut. Plaintiff testified that, since the accident, a portion of his face is numb and:

> "Sometimes it gets a little embarrassing when I'm trying to speak or drink fluids or anything like that. I have been known to make an embarrassment of myself."

Plaintiff reported that Dr. O'Neal told him there was nothing he could do about the loss of sensation, but it may come back on its own. Plaintiff said he had talked to Dr. O'Neal about scar revision, but Plaintiff did not testify as to whether he intended to pursue such treatment.

Plaintiff testified that he gave himself four days off from his job at his body shop, and he estimated that it took about three weeks to get back to full speed. He estimated that he lost $1,500 in income as a result of the accident.

The testimony submitted by the parties relates primarily to Plaintiff's condition, medical care and losses that occurred well before the case was removed in December 2004. The only exceptions are the testimony from the 2005 depositions about the then-current and

post-removal condition of Plaintiff's scar and any remaining sensory issues. The testimony about Plaintiff's injury and damages up to the time of removal is relevant to the issue at hand.

Makita contends that it was facially apparent from the petition that more than $75,000 was in controversy. The petition, however, merely states that Plaintiff sustained a "severe facial laceration and was 'treated on an emergency basis' and required unspecified 'follow-up care.'" Makita makes much of the adjective "severe" used to describe the facial laceration, and it points that "emergency" care was required. But, in terms of facts, the petition tells us only that Plaintiff was cut on the face, went to the emergency room, had some unspecified follow-up care that cost an unknown amount, and claims an unknown amount of lost wages and the like.

Those bare facts do not make it more likely than not that the amount in controversy exceeds $75,000. That the petition describes the cut as "severe" does not somehow elevate the case to removable status. Virtually every personal injury petition that comes before the court in the removal context includes an allegation that the plaintiff, whether injured in a slip and fall accident or car wreck, sustained "severe" and/or "serious" or even "disabling" injuries. Those adjectives, without more facts, do little to inform the court about the actual nature of the injuries so that the damages at issue can be reasonably estimated. The court often directs the filing of an amended notice of removal in such "severe" cases to permit the removing party to provide more facts about the injuries and damages at issue. As often as not, the actual injuries are determined to be soft-tissue or other minor injuries.

The prayer also lists several categories of damages, without any facts to indicate the possible amount claimed. The amount at stake with respect to any or all of those categories is no more likely to be $75,001 than $7,500. The petition does not include enough facts to make one more likely than the other. The petition, accordingly, does not make it facially apparent that the amount in controversy element is present. If the use of adjectives such as severe and emergency, combined with a generic list of categories of damages sought, is sufficient to render a case removable, the amount in controversy requirement will have been eviscerated.

Makita's notice of removal added only two bits of information not found in the petition. Makita related that counsel for Plaintiff had stated that Plaintiff's face was "horribly disfigured" and that counsel conceded that the jurisdictional amount required for removal was met. Makita has since, in essence, supplemented its notice of removal with the deposition testimony of Plaintiff and Dr. O'Neal that it submitted with its opposition to the motion to remand.

The facts presented by Makita do not make it more likely than not that the amount in controversy exceeds $75,000. Those facts are that Plaintiff incurred only $2,235 in medical expenses, claims only $1,500 in lost income, and has identified no other significant special damages. The cut was lengthy and deep, but there is no indication that it caused any unusual or lasting pain, and it required only emergency room treatment with follow-ups to remove sutures. Makita has not cited any Louisiana decisions in which general damages in similar

cases were awarded in amounts that would make it more likely than not that the amount in controversy exceeds $75,000.

Makita faults Plaintiff for waiting so late in the litigation to raise the jurisdiction issue, but subject matter jurisdiction may be raised at any time by the parties or the court, even on appeal. Simon v. Wal-Mart, 193 F.3d at 850. Makita points to original counsel for Plaintiff's statement that the amount in controversy was satisfied, and Plaintiff points to his recent stipulation that his damages do not exceed $75,000. Neither is of much relevance. Parties may not create jurisdiction by concession, and such conclusory statements or stipulations are relevant only to the extent they help resolve an ambiguous record. The deposition testimony, which relates to Plaintiff's condition at the time of removal, leaves no ambiguity that his damages were not sufficient to permit removal.

Accordingly;

**IT IS RECOMMENDED** that the **Motion to Remand (Doc. 41)** be **granted** and that this civil action be **remanded to the 26th Judicial District Court, Bossier Parish, Louisiana.**

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are

directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this the 25 day of May, 2007.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE

cc: Judge Walter